The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SABEEN GUL RAJPUT,

               Plaintiff,

     v.

MICHAEL MUKASEY[1], et al.,

               Defendants.

CASE NO. C07-1029RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 8, 9).  Neither Plaintiff nor Defendants have requested oral argument.  The court has considered all material submitted in support of and in opposition to the parties' motions.  For the reasons stated below, the court GRANTS Plaintiff's motion (Dkt. # 8), DENIES Defendants' motion (Dkt. # 9), and mandates further action by Defendants as described at the conclusion of this order.

---

[1]The court substitutes current Attorney General Michael Mukasey for former Attorney General Alberto Gonzales.  Fed. R. Civ. P. 25(d).

ORDER – 1

## II.  BACKGROUND

Plaintiff Sabeen Gul Rajput is a Pakistani immigrant and lawful permanent resident of the United States.  Stearns Decl. ¶ 3.  On August 9, 2006, she filed an N-400 naturalization petition with United States Citizenship and Immigration Services ("USCIS").  USCIS has yet to adjudicate her naturalization petition, or schedule her naturalization examination.  *See Sze v. Imm. & Nat. Serv.*, 153 F.3d 1005, 1007-08 (9th Cir. 1998) (describing stages of naturalization process).

The parties do not dispute that the sole reason Ms. Rajput's petition has not been adjudicated is an incomplete background and security check.  For each naturalization petitioner, USCIS conducts (or relies on other agencies to conduct) three background inquiries: a Federal Bureau of Investigation ("FBI") fingerprint check, an Interagency Border Inspection System ("IBIS") check performed by the Department of Homeland Security ("DHS"), and an FBI "name check."  Stearns Decl. ¶ 8.  Ms. Rajput has provided fingerprints and passed all preliminary IBIS inquiries.  *Id.*  ¶ 12-18.  The sole reason that USCIS has not adjudicated Ms. Rajput's petition is that it has not received the results of her name check.  *Id.* ¶¶ 6, 15.  USCIS submitted Ms. Rajput's information for a name check on August 21, 2006, and the FBI acknowledged receipt of the information on August 26, 2006.  *Id.* ¶ 15.

Michael Cannon, the chief of the FBI division that performs name checks, submitted a declaration in which he described the name check program generally.  In 2006, the FBI processed more than three million name checks, 45% of them at the request of USCIS.  Cannon Decl. ¶¶ 21-22.  The FBI processes most name checks quickly: 68% of them take 72 hours or less; another 22% take 60 days or less.  *Id.* ¶¶ 13-14.  The remaining 10% require additional, individualized investigation.  *Id.* ¶¶ 15-17.  Although the FBI's policy is to process name checks on a first-in, first-out basis, that policy does

ORDER – 2

not apply to the results of name checks that require individualized investigation. *Id.* ¶ 18.

In contrast to Mr. Cannon's evidence addressing name checks in general terms, there is no evidence explaining why the FBI has not completed Ms. Rajput's name check. Mr. Cannon states that "the FBI cannot provide a specific or general time frame for completing any particular name check," *id.* ¶ 39, but he does not explain what cause or causes underlie the FBI's failure to complete Ms. Rajput's name check. Ms. Rajput has made several inquires with USCIS regarding the status of her naturalization petition, but she has received no specific information. Ms. Rajput has been waiting nearly two years for the results of her name check, and no one at USCIS or the FBI will tell her why.

While awaiting the results of Ms. Rajput's name check, USCIS refuses to take action on her naturalization petition. Ms. Rajput has now turned to this court for relief.

## III.  ANALYSIS

Ms. Rajput seeks summary judgment compelling Defendants to adjudicate her naturalization petition by completing her background check and scheduling her examination[2], and Defendants seek summary judgment declaring their delay in doing so reasonable. On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*

---

[2]Although the USCIS's examination of a naturalization petitioner does not complete the adjudication process, it places the petition on a 120-day adjudication timeline, thus ensuring that the petition will be adjudicated either by USCIS or a district court. 8 U.S.C. § 1447(b).

ORDER – 3

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  When confronted with purely legal questions, the court does not defer to the non-moving party.

Before discussing the motions before it, the court notes that it has previously addressed disputes arising from the FBI's delay in completing name checks.  In *Amirparviz v. Mukasey*, No. C07-1325, 2008 U.S. Dist. LEXIS 7964 (W.D. Wash. Feb. 4, 2008), the court considered a claim from an immigrant seeking to adjust to lawful permanent resident status.  There, the court held that the Government's inability to provide any particularized reason for its long delay in completing the immigrant's name check justified a mandamus remedy.  The court reached the same result for similar reasons in three subsequent orders resolving claims of immigrants applying for lawful permanent resident status.  *Wang v. Chertoff*, __ F. Supp. 2d __, 2008 U.S. Dist. LEXIS 18178 (W.D. Wash. Mar. 7, 2008); *Ali v. Mukasey*, No. C07-1030, 2008 U.S. Dist. LEXIS 18171 (W.D. Wash. Mar. 7, 2008); *Huang v. Mukasey*, No. C07-132, 2008 U.S. Dist. LEXIS 10659 (W.D. Wash. Feb. 12, 2008).  Although this case arises in the context of a naturalization petition, the court reiterates relevant portions of its prior orders here.

Ms. Rajput brings this action under the Mandamus Act, 28 U.S.C. § 1361, which grants district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiff."  She also asserts jurisdiction under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-706.  Although the APA itself does not confer subject matter jurisdiction, the general grant of jurisdiction to resolve federal questions under 28 U.S.C.

ORDER – 4

§ 1331 is, in conjunction with the APA, sufficient to confer jurisdiction over a challenge to federal agency action. *Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 n.5 (9th Cir. 1999); *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004). The avenues of relief that the Mandamus Act and the APA provide are "essentially the same," so this court focuses solely on Ms. Rajput's claim under the APA. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (declining to engage in separate analysis of claims under Mandamus Act and APA).

## A.   USCIS and the FBI Have Mandatory Duties That the Court Can Compel Them to Perform.

To earn relief under the APA, Ms. Rajput must show that the Defendants have a nondiscretionary duty to act, and, in a case where the challenge is to a delay in acting, must show that the delay is unreasonable. *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 63 & n.1 (2004); 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed"). In this case, the Defendants belong to two groups: one consisting of officials connected with USCIS[3], and another connected with the FBI.[4] Both groups have mandatory duties with respect to naturalization petitions.

The USCIS Defendants have a mandatory duty to, at a minimum, conduct naturalization "examinations." The examination of the petitioner is a key event in the naturalization process. Although it appears that, in practice, the examination consists of no more than an interview of the petitioner, Stearns Decl. ¶ 4, the USCIS has the

---

[3]The USCIS Defendants are DHS Secretary Michael Chertoff and USCIS Seattle field office Director Julia Harrison.

[4]The FBI Defendants are Attorney General Mukasey, *see supra* n.1, FBI Director Robert Mueller, and FBI Special Agent Laura Laughlin, who is in charge of the Seattle FBI field office.

ORDER – 5

authority to call witnesses, subpoena documents, and to take similar measures during the

examination.  8 U.S.C. § 1446(b).[5]  Once the examination is completed, USCIS must

adjudicate the naturalization petition within 120 days, or the petitioner may seek judicial

review, in which case a district court judge is empowered to adjudicate the petition.  8

U.S.C. § 1447(b).  On April 25, 2006, USCIS directed its officials not to schedule

examinations of naturalization petitioners until it had received the results of their FBI

name checks, in an effort to avoid judicial review of unadjudicated petitions.[6]  But

regardless of USCIS's policy of delaying examinations, Congress has established that the

examination is mandatory.  8 U.S.C. § 1446(b) ("The [Secretary of DHS] shall designate

employees of [USCIS] to conduct examinations upon petitions for naturalization.").

Although DHS has the authority to "prescribe the scope and nature of the examination of

---

[5]Most of the statutory and regulatory provisions that the court cites vest executive authority in the United States Attorney General and the now-defunct Immigration and Naturalization Service.  Subsequent enactments have transferred naturalization authority to the Secretary of the DHS, and to the USCIS as the Secretary's delegate.  *See, e.g.*, 6 U.S.C. § 271(b)(2) (transferring naturalization authority to USCIS); 6 U.S.C. § 557.

[6]Although Ms. Rajput refers to the USCIS memorandum addressing this policy, Pltf.'s Mot. (Dkt. # 8) at 4-5, she did not submit a copy of the memorandum in support of her motion.  Nonetheless, USCIS does not deny the existence of the memorandum, and it has been made a matter of record in other cases pending before this court.  *E.g.*, Case No. C07-1767RAJ (Dkt. #12-2) (Apr. 25, 2006 memo).

USCIS's policy shift has led to a corresponding shift in jurisprudence.  Prior to the shift, USCIS apparently scheduled examinations without regard to the FBI background check. *See, e.g.*, *Sze*, 153 F.3d at 1008.  Petitioners disappointed in the FBI's delay invoked the unambiguous provisions of 8 U.S.C. § 1447(b), which grants district courts jurisdiction to adjudicate naturalization petitions or otherwise take action upon them *after the USCIS examination*.  Courts who reviewed such cases had no occasion to consider questions of USCIS and FBI duty inherent in cases like the one before the court.  After the USCIS's policy shift, petitioners like Ms. Rajput could not invoke 8 U.S.C. § 1447(b), and turned instead to the Mandamus Act and the APA.  Courts have only recently begun to address such claims. Not surprisingly, a court of appeals has yet to review such a claim, and relatively few district courts have done so.

ORDER – 6

applicants for naturalization as to their admissibility to citizenship," 8 U.S.C.§ 1443(a),

there is no statutory authorization to refuse to conduct an examination of a qualified

petitioner.  Regulations also refer to the examination as mandatory:

> Subsequent to the filing of an application for naturalization, each applicant
> shall appear in person before a [USCIS] officer designated to conduct
> examinations pursuant to § 332.1 of this chapter. The examination shall be
> uniform throughout the United States and shall encompass all factors
> relating to the applicant's eligibility for naturalization.

8 C.F.R. § 335.2(a); *see also SUWA*, 542 U.S. at 65 (noting that agency regulations can

serve as basis for mandatory duty underlying APA action).

The FBI Defendants have a mandatory duty to complete background checks for

naturalization petitioners.  Congress has declared that the USCIS may not "complete

adjudication of an application for naturalization" until it "has received confirmation from

the [FBI] that a full criminal background check has been completed."  Depts. of

Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of

1998, Pub. L. No. 105-119, 111 Stat. 2440, 2448 (1997) (reprinted in statutory notes to 8

U.S.C. § 1446).  Federal regulation goes further, barring USCIS from even conducting an

examination until the FBI has completed its background investigation:

> [USCIS] will notify applicants for naturalization to appear before a Service
> officer for initial examination on the naturalization application only after
> [USCIS] has received a definitive response from the Federal Bureau of
> Investigation that a full criminal background check of an applicant has been
> completed.

8 C.F.R. § 335.2(b).  Neither statute nor regulation mandates that a name check be part of

the background investigation.  Regardless, there is no indication, either in the statute or

regulation, that the FBI has discretion to decline to complete a petitioner's background

check.  To conclude otherwise would require the court to ignore the statutory scheme that

Congress created.  That scheme vests the authority to naturalize immigrants with DHS.  8

U.S.C. 1421(a); 6 U.S.C. §§ 271, 557 (transferring authority from Attorney General to

ORDER – 7

Secretary of DHS).  DHS has delegated that authority to USCIS, an agency under its umbrella.  It seems extraordinarily unlikely, then, that DHS surrendered that authority by permitting the FBI (an agency of the Department of Justice) to derail the naturalization process by refusing to complete a background check.  Even if DHS had surrendered its authority, there is no indication that Congress authorized it to do so.  These considerations, when coupled with relevant statutory and regulatory language, lead the court to conclude that the FBI has a mandatory duty to complete a background investigation for naturalization petitioners.[7]

**B.      Defendants' Delay in Processing Ms. Rajput's Petition is Unreasonable.**

Having established the USCIS and FBI Defendants' duties in the naturalization process, the court must now address *when* they must fulfill those duties.  Neither statute nor regulation provides a timetable for the FBI to complete background checks, nor for the USCIS to conduct a naturalization examination.

Where no statutory or regulatory timetable governs the execution of an agency's mandatory duty, the APA directs the agency to resolve applications reasonably quickly.  5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude

---

[7]The court notes that no consensus has emerged from district court decisions addressing whether the FBI has a mandatory duty to complete its background investigation of naturalization petitioners.  Some reach the same conclusion as this court.  *See, e.g.*, *Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400-401 (E.D. Pa. 2007); *Al Daraji v. Monica*, No. 07-1749, 2008 U.S. Dist. LEXIS 4288 (E.D. Pa. Jan. 18, 2008); *Ghashghai v. Mukasey*, No. 07CV0163-LAB (RBB), 2008 U.S. Dist. LEXIS 20128 (S.D. Cal. Mar. 14, 2008); *Jiang v. Chertoff*, No. C08-332 SI, 2008 U.S. Dist LEXIS 42640 (N.D. Cal. May 13, 2008).  Other district courts have found that the FBI has no mandatory duty in cases like this one.  *E.g.*, *Hamandi v. Chertoff*, No. 07-2153 (ESH), 2008 U.S. Dist. LEXIS 36400 (D.D.C. May 6, 2008); *Wang v. Gonzales*, No. 07-2272-JWL-DJW, 2008 U.S. Dist. LEXIS 303 (D. Kan. Jan. 2, 2008); *Sinha v. Upchurch*, No. 1:07 CV 2274, 2007 U.S. Dist. LEXIS 90286 (N.D. Ohio Dec. 7, 2007); *Alzuraiki v. Heinauer*, 544 F. Supp. 2d 862 (D. Neb. 2008).

ORDER – 8

a matter presented to it."). The court may consider the following six-factor test in

determining whether a delay is reasonable:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Independence Mining Co.*, 105 F.3d at 507 n.7 (citing *Telecomms. Research & Action*

*Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984)).

As to the first of these so-called "*TRAC* factors," the court finds no "rule of

reason" that explains why the FBI has not completed Ms. Rajput's name check. As the

court noted in Part II, *supra*, the FBI completes 90% of name checks within 60 days.

Although Mr. Cannon enumerates several circumstances that can cause delay in

processing name checks, there is no evidence that Ms. Rajput's petition presents one or

more of those circumstances. Neither Mr. Cannon nor any representative of any

Defendant provides evidence to explain the delay in Ms. Rajput's name check. The lack

of evidence precludes a finding that the delay is due to a "rule of reason."

The second *TRAC* factor requires consideration of any Congressional expression

of a "timetable or other indication of the speed with which it expects the agency to

proceed." Congress has expressed its "sense" that "the processing of an immigration

benefit application should be completed not later than 180 days after the initial filing of

the application." 8 U.S.C. § 1571(b). Ms. Rajput's petition has been pending more than

three times as long.

ORDER – 9

As to the third and fifth *TRAC* factors, the court cannot easily categorize the Government's delay as affecting "human health and welfare" rather than mere economic interests. Although Ms. Rajput asserts in her motion that she cannot easily "sponsor her husband as an immigrant" until she is naturalized, Pltf.'s Mot. (Dkt. # 8) at 13, she provides no evidence regarding the circumstances surrounding her husband. Indeed, Ms. Rajput has submitted no evidence at all regarding the personal impact of the delay in adjudicating her naturalization petition.

In examining the fourth *TRAC* factor, the court must consider the effect of expediting Ms. Rajput's petition on other governmental priorities. USCIS offers evidence that expediting Ms. Rajput's name check would cause delay in processing other name checks, including name checks that have been pending even longer than hers. Stearns Decl. ¶ 18. While the court acknowledges this concern, it cannot deny relief to a person whose petition has been unreasonably delayed merely because there are others who have perhaps been even more unreasonably delayed.

Finally, as to the sixth *TRAC* factor, although there is no evidence of a per se improper purpose underlying the delay in processing name checks, the court notes its concern over the USCIS's apparently conscious decision to adopt a policy to evade judicial review. Congress expressly provided the judiciary with a role in ensuring the completion of naturalization petitions. *See* 8 U.S.C. § 1447(b) (permitting district court to assume jurisdiction over naturalization petitions not adjudicated within 120 days of examination). The USCIS's decision to change its policies to ensure that no examination occurs until after an FBI name check seems to disregard this division of responsibility.

As in *Amirparviz* and cases following it, the court also considers justifications for the delay in adjudicating Ms. Rajput's petition that do not fall squarely within one of the *TRAC* factors. The justifications fall into two categories. First, that national security and

ORDER – 10

public safety concerns mandate the use of name checks. Second, that the sheer number of name checks that the FBI must process causes delays.

The court is not persuaded by Defendants' attempt to justify their delay in this case by trumpeting their generalized obligation to protect public safety and national security. The court readily acknowledges the importance of public safety and national security, but sees no connection between these concerns and this case. Ms. Rajput has been a lawful permanent resident since September 2001. If Ms. Rajput presents a threat to national security and public safety, neither the FBI nor USCIS ameliorates that threat by delaying a decision on her naturalization petition. Even if USCIS naturalized Ms. Rajput it would retain options in the event that it discovered that she posed a threat to national security. *See* 8 U.S.C. § 1451 (permitting district court action for revocation of naturalization); *Gorbach v. Reno*, 219 F.3d 1087, 1093-94 (9th Cir. 2000) (discussing "denaturalization" procedure). If Defendants are concerned about public safety and national security, they should find a way to process name checks more rapidly, thereby revealing threats to security more quickly. Indeed, the record reflects that the FBI has taken steps to speed name check processing. Cannon Decl. ¶¶ 31-38 (describing short-term, medium-term, and long-term steps to improve name check efficiency). But, while those changes are taking effect, Defendants protect no one by delaying a decision on Ms. Rajput's petition.

As to Defendants' second justification, evidence of the large numbers of name checks that USCIS must request and that the FBI must process raises more questions than it answers. Despite the large number of name checks it must process, the FBI completes the majority of them within three days, and 90% of them within 60 days. When a petitioner like Ms. Rajput, whose name check has been pending for nearly two years,

ORDER – 11

inquires as to the reason for her delay, no one can offer her a cogent response.  Instead, Defendants rely entirely on generalized and systemic justifications for delay.

Ultimately, the court finds the delay in processing Ms. Rajput's name check to be unreasonable as a matter of law.  Although the discussion above highlights multiple bases supporting this conclusion, the most compelling is Defendants' inability to give any reason as to the delay in processing *Ms. Rajput's* name check.  Her name check has languished at the FBI for almost two years.  Has the FBI discovered something about Ms. Rajput's background that has required years of additional investigation?  Is Ms. Rajput in a category of applicants who are subjected to a more extensive name check process?  Is there any particular reason that Ms. Rajput's name check has not yielded a definitive result?  The court has no answers to these questions, because no Defendant has presented evidence to answer them.  On the record before the court, Ms. Rajput's long wait for naturalization could be due to anything from a national security "red flag" to a bureaucratic error.  The court is sensitive to the burdens that the FBI must shoulder, and the scarcity of resources to direct toward serving that task.  In light of those burdens, a nearly two-year delay in completing a name check is neither presumptively reasonable nor unreasonable, but a nearly two-year delay for which Defendants cannot provide a reason is unreasonable as a matter of law.  *See Alghamdi v. Ridge*, No. 3:05cv344-RS, 2006 U.S. Dist. LEXIS 68498, at *42 (N.D. Fla. Sept. 25, 2006) ("[W]hile a reasonable person would not dispute the necessity of conducting a background check on an applicant for naturalization, a reasonable person would require a satisfactory justification for a substantial delay in completing the background check.").

**C.    The Court Must Fashion a Remedy that Considers the Division of Responsibility Between the FBI and USCIS Defendants.**

ORDER – 12

As the court has noted, Congress has barred USCIS from *completing* adjudication of a naturalization petition until the FBI returns the results of a background check.  This prohibition, however, does not prevent USCIS from taking steps short of completing adjudication.   Nonetheless, the regulations that effect Congress's command expressly prohibit the USCIS from scheduling a naturalization examination until it has received background check results from the FBI.  8 C.F.R. § 335.2(b).[8]  Although Ms. Rajput briefly contends that the regulation is *ultra vires*, Pltf.'s Opp'n (Dkt. # 10) at 8, she does not present sufficient argument or evidence for the court to address that contention.  *See Mocanu v. Mueller*, No. 07-445, 2008 U.S. Dist. LEXIS 10122 (E.D. Pa. Feb. 8, 2008) (holding, after extensive review of law and legislative history, that name check requirement is *ultra vires*).

Under this regulatory scheme, responsibility for the delay in adjudicating Ms. Rajput's application currently rests with the FBI Defendants.  They have a duty to complete Ms. Rajput's background investigation in a reasonable time.

The court therefore orders as follows: the FBI shall, no later than July 25, 2008, complete Ms. Rajput's background investigation and notify USCIS of the results, and file a notice in this action that it has done so.  Alternatively, Defendants shall appear before the court on July 30, 2008 at 10:00 a.m. to show cause why it has not completed her background investigation.  If Defendants choose this route, they shall provide reasons specific to Ms. Rajput that justify the delay in this action.  Because there is no evidence suggesting that USCIS will delay adjudication of Ms. Rajput's petition after it receives

---

[8]USCIS's April 2006 memo provides evidence that, despite 8 C.F.R. § 335.2(b), USCIS former practice was to conduct naturalization examinations before receiving background check results from the FBI.  *See also supra* n.5.  The memo states that USCIS's reason for changing this practice was not to adhere to the regulation, but rather to ensure that petitioners could not turn to district courts for relief under 8 U.S.C. § 1447(b).

ORDER – 13

notification of a completed background check from the FBI, the court declines at this time
to require a particular course of action from USCIS.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Ms. Rajput's motion for
summary judgment (Dkt. # 8) and DENIES Defendants' motion (Dkt. # 9).  The court
orders the FBI Defendants to complete Ms. Rajput's background investigation and notify
USCIS of the results no later than July 25, 2008, or alternatively, to appear for a show
cause hearing at 10:00 a.m. on July 30, 2008.  The FBI Defendants shall file notice in the
court of which option they have chosen no later than July 25, 2008.

Dated this 20th day of June, 2008.


The Honorable Richard A. Jones
United States District Judge

ORDER – 14